**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP CANTORE and JESSICA CONLEY, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 25 C 4677 |
| v. | ) ) | Judge Sara L. Ellis |
| ROUTE APP, INC., | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

After Plaintiffs Philip Cantore and Jessica Conley purchased items from e-commerce retailers who automatically added Defendant Route App, Inc.'s ("Route App") package protection service at checkout, they filed this putative class action against Route App. In an amended complaint, Plaintiffs bring claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*; violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; tortious interference with contract; and unjust enrichment. Route App now moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have not sufficiently alleged their tortious inference with contract claim, the Court dismisses that claim without prejudice. But the Court finds that Plaintiffs have sufficiently pleaded all other claims and allows them to proceed.

## BACKGROUND[1]

**I.      Route App and its Shipping Protection Fee**

Route App is a software company headquartered in Lehi, Utah that offers various shipping services to e-commerce retailers, including shipping protection.  Route App directs e-commerce retailers who use its services to install a widget on their websites.  This widget adds a hidden, pre-selected box or toggle that adds junk fees, like "package protection" fees, to all orders.  Doc. 32 ¶ 14.  Route App designed the interface presented by the e-commerce retailers to consumers regarding the package protection fee, including the name of the fee, the time at which the e-commerce retailer's website mentions the fee for the first time, the time at which the e-commerce retailer's website adds the fee to the purchase price, and the default pre-selection of the box or toggle.

Specifically, when a customer views an item online, the e-commerce retailer informs the consumer that the retailer will deliver that item for free or for a flat rate.  When the consumer begins the checkout process on the e-commerce retailer's website, the website then adds a small fee for "Shipping Protection by Route" to the consumer's cart, without any action by the consumer.  *Id.* ¶ 24.  The checkout page displays a small, pre-checked box that adds the fee, designed by Route App to go unnoticed by consumers.  The checkout page presents the shipping protection fee as mandatory, leaving consumers unaware that they can remove the fee by unchecking the small box on the screen.  Route App designed this fee to go undetected by customers and to provide additional revenue to both Route App and e-commerce retailers.

---

[1] The Court takes the facts in the background section from Plaintiffs' amended complaint and presumes them to be true for the purpose of resolving Route App's motion to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).  The Court "may also take judicial notice of matters of public record."  *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

Route App encourages and pressures e-commerce retailers to keep the default option to increase its profits. As a result, Route App reports that 98% of e-commerce retailers leave the box auto checked. Route App pushes the auto-check default because it is aware that most consumers will then unknowingly purchase the package protection. But if Route App programmed its widget to offer optional shipping protection, requiring an opt-in, then most consumers would not purchase the protection. Route App receives a sizable portion—at least half—of all fees that it imposes on consumers.

## II.    Plaintiffs' Experiences

Cantore, an Illinois citizen, purchased three beverage bottles from an e-commerce retailer named Ritual Zero Proof on September 17, 2024. Ritual Zero Proof repeatedly informed Cantore that his purchase was eligible for free shipping. But his purchase included a $2.15 "Shipping Protection by Route" fee.[2]  *Id.* ¶ 53. The website automatically and surreptitiously added this fee to his cart. Cantore did not know the fee "existed" or that he could remove the fee from his cart prior to purchase. *Id.* ¶ 54. Cantore would not have purchased the shipping protection had he known it was optional.

Conley, a citizen of California, purchased several apparel items from e-commerce retailer Killstar on November 18, 2024 and January 16, 2025. Killstar repeatedly informed Conley that her purchase was eligible for flat-rate shipping. But both of her purchases included a $1.55 "Shipping Protection by Route" fee. *Id.* ¶ 58. The website automatically and surreptitiously added this fee to her cart. Conley did not know the fee "existed" or that she could remove it prior to purchase. *Id.* ¶ 59. Conley would not have purchased the shipping protection had she known it was optional.

---

[2] Cantore states that the fee may have been less than $2.15 because he used a discount code that applied to "all items in his cart." Doc. 32 ¶ 53.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      Judicial Notice**

Route App asks this Court to consider or take judicial notice of the ten documents it attaches to its motion to dismiss, including: multiple complaints filed in different courts around the country by Plaintiffs' counsel involving substantially similar allegations directed at e-commerce retailers (rather than Route App), an article on package theft authored by security.org, and a redline comparison of Plaintiffs' original and amended complaints.

The Court declines to take judicial notice of the redline comparison of Plaintiffs' original and amended complaints because "[i]t is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*" and "cannot be considered by the court on a motion to dismiss the amended complaint."

*Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998). And although the Court agrees to take judicial notice of the package theft article and the civil complaints filed by Plaintiffs' counsel in other state and federal courts, such notice is not for the truth of the matters asserted in each item, but of the fact that such documents exist and contain the contents depicted. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) ("Although a court may generally take judicial notice of public records [such as complaints], under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute."); *Wiley v. Am. Soc'y of Anesthesiologists, Inc.*, No. 25 C 412, 2025 WL 2976482, at *3 n.3 (N.D. Ill. Oct. 21, 2025) (taking judicial notice of a publicly available press release and article without regard to the truth of their contents); *Butler v. Hogshead-Makar*, No. 21 C 6854, 2023 WL 4663644, at *6 (N.D. Ill. July 20, 2023) (taking judicial notice of news articles not for their truth but for "the fact that the articles were published and that they say what they say").

## II. Consumer Protection Statutes

Route App first contends that Plaintiffs fail to state a claim under the Illinois and California consumer protection statutes that form the basis of four of Plaintiffs' claims: the ICFA (Count III), UCL (Count IV), FAL (Count V), and CLRA (Count VI). Route App first asserts that e-commerce retailers—rather than Route App—control the presentation of Route App's services on their websites and therefore Route App has not engaged in any deceptive acts. Route App also argues that Plaintiffs' claims fail because they do not identify any act that would deceive a reasonable consumer.

### A. Route App as the Proper Defendant

Route App first argues that the e-commerce retailers, rather than Route App, made any purported misrepresentation. But Plaintiffs allege that Route App "designed the key features of

the deceptive process at issue in this case and then foisted that design upon merchants." Doc. 37 at 11; *see also* Doc. 32 ¶ 14 (alleging that Route App designed its plug in to automatically add fees to consumers' carts); *id.* ¶¶ 35–38 (alleging that Route App named its add-on fees "Shipping Protection" and "Package Protection," even though the e-commerce retailers and shipping companies provided such protection for free); *id.* ¶¶ 15–16 (alleging that Route App instructed e-commerce retailers to only make oblique and late reference to these fees and pressured them to automatically add these fees to consumers' carts). So while third-party e-commerce retailers may have hosted Route App's widget, Plaintiffs' allegations indicate that it is really Route App that engaged in deceptive acts through its subtle and confusing widget design and naming, and its instructions to e-commerce retailers. *Accord Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 860 (N.D. Ill. 2021) (finding that Amazon could not be liable for the plaintiff's ICFA claim because Amazon only "allow[ed] the posting of inaccurate information" that a different company authored and directed Amazon to use).

### B. Deceptive Acts or Practices

To state a claim under each consumer protection statute, Plaintiffs must plausibly allege that Route App's representations are likely to deceive a reasonable consumer. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 & n.1 (7th Cir. 2020) (various state consumer protection statutes, including the CLRA, UCL, and ICFA "all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers") (citation omitted) (internal quotation marks omitted); *Stiles v. Trader Joe's Co.*, No. CV 16-04318, 2017 WL 3084267, at *3, *5 (C.D. Cal. Apr. 4, 2017) (the "reasonable consumer" standard governs UCL, FAL, and CLRA claims).

"A statement is deceptive if it creates a likelihood of deception or has the capacity to deceive, in that it may mislead a reasonable consumer, as understood in light of all the

information available to plaintiffs." *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (citations omitted) (internal quotation marks omitted). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception and look at this question in view of the 'totality of the information' available to the consumer at the point of deception." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019)).

Route App argues that Plaintiffs fail to allege "what deception Route App is responsible for with sufficient particularity." Doc. 34 at 11. But Plaintiffs allege that Route App engaged in four deceptive acts: (1) designing a widget that automatically adds shipping protection fees to consumers' carts at a late check-out stage and forces consumers to take affirmative action to reject the service; (2) naming its purported junk fee as either "Shipping Protection" or "Package Protection" to confuse consumers; (3) charging consumers an additional shipping fee when e-commerce retailers promised Plaintiffs free or flat-rate shipping; and (4) offering shipping protection but providing no package protection beyond that provided by the e-commerce retailers or shipping companies.

The Court finds Plaintiffs' third and fourth alleged deceptive acts unconvincing. In the third alleged deceptive act, Plaintiffs allege that the e-commerce retailers promised Plaintiffs free or flat-rate shipping. This promise, however, came from the e-commerce retailers and not Route App. Route App, therefore, did not promise Plaintiffs any certain cost beyond the cost of its package protection service. And regarding the fourth alleged deceptive act, the Court does not find plausible, based on Plaintiffs' alleged facts, that Route App's package protection does not extend beyond that provided by e-commerce retailers and shipping companies. The amended complaint fails to include allegations that explain *why* Plaintiffs believe Route App does not

actually provide an additional package protection service. Moreover, the amended complaint does not allege that anyone damaged, lost, or stole Plaintiffs' packages, nor that Plaintiffs attempted to utilize Route App's service and found it unavailable or inadequate. *See Ramos v. EyeBuyDirect, Inc.*, No. 25-CV-00539, 2025 WL 2633103, at *10 (C.D. Cal. Aug. 27, 2025) (agreeing with the defendant that "Shipping Protection" likely provides additional protection not offered by general mail carriers).

The Court, however, finds that Route App's widget design and name may deceive a reasonable consumer. Plaintiffs allege that Route App designed a widget to automatically add its shipping protection fee to consumers' carts only once consumers begin the checkout process, presenting the fee as mandatory. Doc. 32 ¶¶ 23–25. And a reasonable consumer has more reason to confuse a shipping protection fee, automatically added to its cart, as mandatory rather than optional because the shipping protection fee is separate from any basic free shipping promised by the e-commerce retailers.[3] The Court will therefore allow Plaintiffs to proceed on these theories. *See Ramos*, 2025 WL 2633103, at *10 (finding that Ramos plausibly alleged that a reasonable consumer was likely to be deceived by the defendant's shipping protection fee because a reasonable consumer may have thought the fee was mandatory given the automatic addition of the charge).

### C.     Rule 9(b)'s Heightened Pleading Standard

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will

---

[3] Route App complains that Plaintiffs removed screenshots when amending their complaint that "reveal[s] that there is nothing deceptive about the checkout process." *Id.* at 12. But, as explained when discussing Route App's judicial notice request, the Court cannot consider information included in the original complaint but overlooked in the amended complaint.

necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

In claiming that Plaintiffs have failed to meet this heightened pleading standard for their fraud causes of action, Route App contends that Plaintiffs do not "allege *any* specific facts regarding [their] shopping experience, let alone with requisite particularity." Doc. 34 at 14. But Plaintiffs clearly allege that Route App includes confusing, automatic shipping protection fees as customers navigate e-commerce retailers' online checkout processes. These allegations satisfy the requirements of Rule 9(b). *See Ramos*, 2025 WL 2633103, at *11 ("Ramos has clearly alleged the who (EBD), what (alleged misrepresentations of 'free shipping' and confusing, pre-added 'Shipping Insurance' and 'Shipping Protection' fees), when (as customers navigate through the checkout flow), where (on EBD's website), and how (through various representations and the automatic adding of fees)").

### D. Unfair Conduct

A plaintiff may also bring an ICFA claim by alleging unfair conduct, rather than a deceptive act or practice. Because Plaintiffs allege that Route App's conduct "offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," Doc. 32 ¶ 100, their unfairness claim is not necessarily premised on

9

intentional deception and the Court therefore must assess this claim "under the less demanding standard of Rule 8(a)," *Kahn*, 107 F.4th at 602.

To determine whether a practice is unfair within the meaning of the ICFA, courts look to three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers." *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002)). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill. 2d at 418 (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1143–44 (Conn. 1992)).

Route App argues that Plaintiffs only vaguely allege that the package protection fee violates unspecified federal guidance and the Plaintiffs cannot rely on an alleged Restore Online Shopper's Confidence Act ("ROSCA") violation, 5 U.S.C. § 8403(1), because Plaintiffs do not bring a separate ROSCA claim. But Plaintiffs include Federal Trade Commission ("FTC") articles that demonstrate that the FTC has condemned pre-checked boxes because they do "not constitute affirmative consent," Doc. 32 ¶ 27, and has proposed rules to ban hidden and falsely advertised fees, *id.* ¶ 46. Further, Route App does not cite to any case that states that a plaintiff must bring a separate ROSCA claim to rely on the statute to establish an unfair or unlawful practice.

Plaintiffs contend that Route App's package protection fee, automatically and surreptitiously added to consumers' carts, offends public policy, is unethical, and seriously injures consumers by making them believe that the fee is mandatory. Plaintiffs' allegations of unfair practices "meet the federal notice-pleading standard because they claim that [Route App] 'engaged in unfair conduct and aver[] facts that, if proven, make relief more than merely

speculative.'" *Benson*, 944 F.3d at 647 (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008)).  And courts around the country have similarly found businesses that automatically add optional fees or waivers constitute an unfair practice under various states' consumer protection laws.  *See, e.g.*, *Seagull v. WinRed, Inc.*, No. X07-HHD-CV22-6154527-S, 2023 WL 4322714, at *4 (Conn. Super. Ct. June 28, 2023) (noting that, in context of discussing Connecticut's consumer protection law, "[t]he provision and use of the option to use default, pre-checked recurring donation boxes may be inherently misleading [and] cause unauthorized transactions"); *Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.*, No. 05-61931-CIV, 2006 WL 4579688, at *2 (S.D. Fla. Feb. 6, 2006) (concluding an alleged practice of automatically including an optional damage waiver into a purchase contract without alerting the consumer was misleading because it "amount[ed] to a 'negative option,' a universally condemned sales practice in which customers are sold something unless they ask not to purchase it").

> ### E.      Voluntary Payment Doctrine

Route App argues that the voluntary payment doctrine bars Plaintiffs' claims for monetary relief.  "The voluntary payment doctrine prevents recovery of payments voluntarily made with knowledge of the facts." *Ramos*, 2025 WL 2633103, at *8.

First, the Court notes that the voluntary payment doctrine is an affirmative defense, and "a complaint or a counterclaim does not have to plead around an affirmative defense to survive a motion to dismiss." *Pittsfield Dev., LLC v. Travelers Indem. Co.*, 542 F. Supp. 3d 791, 799 (N.D. Ill. 2021) (internal quotation marks omitted).  Even so, the voluntary payment doctrine does not apply to the facts alleged by Plaintiffs.  "The rule is that in the absence of fraud, misrepresentation, or mistake of fact money voluntarily paid under a claim of right to the

11

payment, *with full knowledge of the facts by the person making the payment*, cannot be recovered unless the payment was made under circumstances amounting to compulsion." *King v. First Cap. Fin. Servs. Corp.*, 215 Ill. 2d 1, 30 (2005) (emphasis added) (quoting *Ill. Graphics Co. v. Nickum*, 159 Ill. 2d 469, 497 (1994)). Here, Plaintiffs allege that they were not aware that the shipping protection fee was optional or removable. *See* Doc. 32 ¶¶ 54–55, 59–60. And because such allegations indicate that Plaintiffs did not have full knowledge of the facts surrounding the payment, the voluntary payment doctrine does not bar their claims. *See Ramos*, 2025 WL 2633103, at *8 (rejecting the defendant's voluntary payment doctrine defense at the motion to dismiss stage on almost identical facts).

## III. Common Law Claims

### A. Tortious Interference

Both parties agree that Illinois and California require the plaintiff to plead the same five elements to state a tortious interference with contract claim:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989)); *see also Disney Enters., Inc. v. Redbox Automated Retail, LLC*, No. 17–08655, 2018 WL 1942139, at *2 (C.D. Cal. Feb. 20, 2018).

Route App contends that Plaintiffs fail to establish the first, second, and third elements. The Court only addresses the third: whether Route App intentionally and unjustifiably induced a breach of contract between Plaintiffs and the e-commerce retailers. Plaintiffs assert that Route

App adds its package protection fee to intentionally induce the e-commerce retailers to breach its free or flat-rate shipping promise to Plaintiffs. But the Court is unconvinced by this argument. As discussed above, there is a difference between the shipping fees that e-commerce retailers charge and Route App's package protection fee. Route App's package protection fee collection, even if it shares some profits with the e-commerce sellers, does not mean that the e-commerce sellers broke their free or flat-rate shipping fee promise. And most importantly, Plaintiffs do not allege that Route App intended such a breach. Plaintiffs only include conclusory allegations that "Route [App] intended to prevent or hinder performance of the contract between e-commerce retailers and [Plaintiffs]." Doc. 32 ¶ 77. This is insufficient; thus, the Court dismisses Plaintiffs' tortious interference with contract claim. *See Brown v. Montgomery*, No. 20 CV 04893, 2024 WL 1243669, at *6, 8–9 (N.D. Ill. Mar. 22, 2024) (tortious interference with contract claim failed where the plaintiff alleged only that the defendants' actions had a "downstream impact" on the contract and did not suggest that the defendants acted "with the express purpose of interfering" with the plaintiff's relationships); *Cohen v. Lewis*, No. 03 C 5454, 2004 WL 2481015, at *7 (N.D. Ill. Nov. 3, 2004) (to prove tortious interference with contract, the plaintiff will have to show more than that the defendant "merely created a condition that opened the way for the [third parties] to breach their contracts"); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485 (1998) ("[A] plaintiff must show not merely that the defendant has succeeded in ending the relationship or interfering with the expectancy, but 'purposeful interference'-that the defendant has committed some impropriety in doing so.").

### B. Unjust Enrichment

"In Illinois, '[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that

defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs.*, 131 Ill. 2d at 160). "Unjust enrichment is not an independent cause of action" but a "condition that may be brought about by unlawful or improper conduct as defined by law." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (quoting *All. Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 492 (1995)). "[A] plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Id.* (quoting *HPI Health Care Servs.*, 131 Ill. 2d at 160). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517; *see also Smith v. Loyola Univ. Med. Ctr.*, No. 23 C 15828, 2024 WL 3338941, at *9 (N.D. Ill. July 9, 2024) (declining to dismiss an unjust enrichment claim tied to a live ICFA claim).

Route App argues that Plaintiffs' unjust enrichment claim must fail because it is based on the same set of facts as their other claims which, according to Route App, must also fail. But because the Court declines to dismiss most of Plaintiffs' other claims, it also declines to dismiss their alternatively pled unjust enrichment claim on this basis. Route App also argues that it has no direct transactional link with Plaintiffs, but Plaintiffs allege that Route App, through its widget, obscured its fees and misrepresented consumers' shipping costs, thereby coercing Plaintiffs' payment and increasing its profits. *See, e.g.*, Doc. 32 ¶¶ 31–34, 43. This is sufficient to state an unjust enrichment claim.

14

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Route App's motion

to dismiss [34]. The Court dismisses the tortious interference with contract claim without

prejudice.


Dated: May 7, 2026

                                      SARA L. ELLIS
                                      United States District Judge